[Civ. No. 1828.   Second Appellate District.—July 27, 1917.]

## F. L. STINEMAN, Appellant, v. W. M. GOTTSCHALK et al., Respondents.

BROKER'S COMMISSIONS—INDIVIDUAL INTEREST IN LEASING PROPERTY— INAPPLICABILITY OF PRINCIPLE.—A broker employed to secure a tenant for a building in course of construction, who with a third person enters into a contract to lease the premises themselves, subject to conditions, which were never performed, is not prevented· thereby from recovering his commission for negotiating a subsequent lease with such third party and other persons, as the principle that a broker cannot recover commissions for services when his position is inconsistent with his duty as agent has no application to such a case.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Lewis R. Works, Judge.

The facts are stated in the opinion of the court.

Frank Stewart, Stewart & Weil, and J. W. Howell, for Appellant.

Byron C. Hanna, Joseph Musgrove, Charles W. Lyon, and Fredericks & Hanna, for Respondents.

SHAW, J.—This is an appeal by plaintiff, prosecuted upon the judgment-roll alone, from a judgment in favor of defendants.

The contention of appellant is that upon the findings he, and not defendants, is entitled to judgment.

The action is based upon an alleged contract made in January, 1914, whereby defendants, who were the owners of a building then in course of construction and designed for business and hotel purposes, employed plaintiff to secure a tenant therefor for a term of ten years at a term rental of $111,360, and promised to pay the reasonable value of his ser-

vices under said employment, which facts are admitted or found by the court to be true. The court further found that subsequent to the date of said contract of employment plaintiff and one Charles J. Lick entered into a contract whereby they agreed to lease the property for which plaintiff had undertaken to secure a tenant, provided that they or defendants should be successful in securing a license for the sale of liquor on the premises; otherwise such agreement to have no force. The condition was not performed. Thereafter, about March 7, 1914, defendants leased said property for a period of ten years for the aggregate rental of $111,696 to said Charles J. Lick and Earl Gilman, Grant Gilman, and Forrest Gilman. As to this lease and the fact that plaintiff was instrumental in securing the execution thereof, the court found "that the plaintiff under his said agency and employment from the defendants, did introduce said Charles J. Lick to the defendants, and that thereafter the said Charles J. Lick did continuously negotiate with the defendants for said lease either in connection with the plaintiff or in connection with Earl Gilman, Grant Gilman, and Forrest Gilman, and that the act of said Charles J. Lick in executing the said lease as above stated in connection with the said parties last mentioned was the result of the efforts of the plaintiff; that the plaintiff did not procure for defendants tenants in the persons of Earl Gilman, Grant Gilman, and Forrest Gilman otherwise than as follows: That the plaintiff did, on or about the tenth day of January, 1914, propose to said Earl Gilman, Grant Gilman, and Forrest Gilman that they lease the said premises, but that said parties last mentioned informed the plaintiff that they could not lease the said premises, and at that time declined to enter into any negotiations for that purpose"; that no further discussion or negotiation was had by plaintiff with the Gilmans in reference to the matter. The court further found "that the reasonable value of plaintiff's services under said employment was and is the sum of $1,728.96."

The contention of respondents is that plaintiff's employment as agent was terminated by the contract subsequently made, whereby he and Lick proposed to lease the property subject to the condition named. Without so deciding, we may for the purposes of this case concede, as claimed by respondents, that where one employed as an agent to sell property or secure a tenant therefor buys the property himself or

leases the same, he, upon grounds of public policy, due to the fact that as such purchaser or lessee his position is inconsistent with his duty as agent, cannot claim a commission for such service. Nevertheless plaintiff, as shown by the findings, did not lease the property from the defendants, but merely proposed to enter into a contract of lease subject to conditions which were not performed. In other words, the negotiations never ripened into a contract of lease; hence the principle suggested by respondents has no application to this case.

As to the other point, the findings are silent as to whether or not plaintiff ever introduced the Gilmans to defendants or informed them that he had tried to interest them in the proposition. Omitting consideration of the Gilmans, it conclusively appears that the securing of Lick as a tenant for the property was "the result of the efforts of plaintiff" under his contract made with defendants, and that the act of Lick in leasing the property and assuming the obligation to pay defendants the term rental of $111,696 was due to the services rendered by plaintiff in the course of his employment. The fact that the Gilmans, at Lick's request or otherwise, joined with him in leasing the property, is a factor of no more importance than had they merely guaranteed performance on the part of Lick whose obligation, in case of inability of his colessees to perform the covenants of the lease, would as to defendants be that of sole lessee. That plaintiff did procure Lick as a tenant who, jointly with the Gilmans executed the lease, conclusively appears from the findings; that Lick, influenced perhaps by the fact that the Gilmans were willing to join with him in the undertaking, was ready and willing to assume the obligations imposed by the terms of the lease, appears from the fact that he executed the same; that defendants agreed to pay plaintiff the reasonable value of the services rendered, likewise appears from the findings, and this value was found by the court to be $1,728.96, which sum, upon the findings, plaintiff is entitled to recover.

The judgment is reversed and the trial court directed to enter judgment upon the findings made in favor of plaintiff as of the date thereof for $1,728.96.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 24, 1917.